Good morning. Good morning, Your Honor. Will you be making all the argument? I will. Okay. So you have ten minutes total. Thank you. May I please the Court? My name is Manmeet Soni, counsel for petitioner Mr. Saiful Islam. With the Court's permission, I would like to reserve two minutes for rebuttal. This case is about Mr. Islam, an unrepresented, detained asylum seeker who fears persecution on account of his political opinion in Bangladesh. The record evidence shows that Mr. Islam is a dedicated and active member of the BNP, the country's opposition party. After the Awami League came into power in 2008, the Awami League, including his uncle, who is a prominent and powerful leader, tried to recruit Mr. Islam to join them. When Mr. Islam refused to leave the BNP, the Awami League, including his uncle, acted with impunity and went after his life. Well, does the Awami League still rule in Bangladesh? Yes, Your Honor. Okay. What evidence has your client offered showing that his uncle was involved in any of the three attacks? And then also, is there any evidence that the Bangladeshi government directed or acquiesced in any of the three attacks? Yes, Your Honor. With respect to the first question, the respondent submitted the police report from May 2012, and that is on AR 172, as well as AR 185. He thinks it was his uncle. In the police report, Your Honor, he specifies that his uncle, Mr. Abdul Sattar, who is part of the Awami League, attacked him, and that he himself is part of the BNP. Mike, I have a question. Your client was pro se in front of the Immigration Court, correct? That is correct, Your Honor. All right. And if it goes back, I assume that you'll continue to represent him? Your Honor, we received this case. We are appearing pro bono. We received this case through the BIA Pro Bono Project. Petitioner now currently resides in Massachusetts. We will be working with that agency to secure pro bono counsel for Petitioner. With respect to your second question, Judge Callahan, I believe it was to do with the Bangladeshi government acquiescing. Yes, because the police did a report, maybe not as speedy as they wanted, and then I think your client left for a while, and then the government helped him get back in and all of that. Because you have to, in order to prevail here, the record must compel your result, correct? Yes. So there does seem to be some evidence in the record that the government is not showing a blind eye to all of this. Your Honor, with respect to the government acquiescence in the statute, it is whether the government is unable and unwilling to protect. And this circuit has never construed that to require that every level or every officer that's part of a government where a political opinion claim is raised go after or be a persecutor involved in the persecution of the applicant. And here in this case, not only do we have the evidence in this record that the Awami League leaders, or the members of the Awami League, as well as the fact that Mr. Saiful Islam testified repeatedly and wrote in his asylum application that his uncle is a powerful, prominent member of the Awami League, there's enough to suggest that these are in fact quasi, if not government actors, quasi-government actors. And the country conditions report from the Department of State in 2013 also points out that within the government there is lots of corruption as well as significant political violence in the country that the government has been unable and unwilling to control. I have a question before you continue. I understand that part of the record. So the immigration judge really focused in his examination on your client's uncle who wanted your client's property. And my question to you is, can the uncle's affiliation with the Awami League facilitate this property acquisition? Does it or does it not? Your Honor, the record evidence from Mr. Islam's testimony supports that. That absolutely. And in fact, according to Mr. Islam himself, he testified his father passed away in 2002. He inherited that property in 2002. It is not until 2011 when the Awami League is comfortably in power, is the ruling party of Bangladesh, that these attacks against him begin. So it's after the party issue is... Yes, and in fact, even according to the record evidence that the immigration judge did not probe, November 2011 is the first time the Awami League members show up in his shop and attack him. Thereafter, there's a February 2012 report that Mr. Islam files saying his uncle is about to make a murderous offense on him at any time. And thereafter, we have two more harms against him, each escalating, that by the time the May 2012 attack happens, he is seriously injured. What's your best case for the proposition that because the uncle is a prominent member of the political party in charge, that that makes this quasi-government actors? Your Honor, where there... Sorry, just to get clarification, Your Honor, are you... Because I think that the facts are not great on governmental unwillingness to protect him or that it was that the government basically condoned the attacks. And so I gather by your arguments, and I think the parties filed 28J in this case, that you're trying to move this case to the area where these attacks are actually done by government actors. And so what's the best case that you have that stands for the proposition that membership in a political party that's in power or leadership in that party that makes these attacks by government actors to address the government willingness or unwillingness to protect him, a factor that you would need to prove? Sorry. Your Honor, this court's decision in Ahmed v. Kessler, which actually also involves a Bangladeshi national who has a political opinion claim because of his position against the Bangladeshi government. And in fact, in his case, the attackers were the opposition party belonging to the Awami League when the Awami League was in the opposition at that time. In that instance, he had suffered three instances of harm, and each of those harms took place after he'd protested on his political opinion, and thereafter other family members had also been threatened. And he was in that case, I believe, supports here that his uncle and the Awami Leagues are in fact quasi-government actors. In that case as well, the court found that the government was unable and unwilling to protect him. All right. Do you want to reserve your last two minutes? Oh, yes, Your Honor. Sorry. Oh, no. You were answering a question, but you're down to two minutes. So do you want to reserve? Yes, please. Thank you. Thank you. Good morning. Good morning. May it please the Court. Colin Tucker for the Attorney General. I suppose we'll just dive right in. I'd like to start, if the Court's okay, with a discussion of nexus. This is a case where it's very important to be mindful of the distinction between harm inflicted on account of political opinion and harm arising from conflict between parties who have political opinions. The latter, without more, is not sufficient to make a claim for asylum or withholding of removal. Now, the Court needs to first recognize that there are two divergent threads of harm that they have to follow in order to completely resolve the petition. The first is the conflict between Petitioner and his uncle, which the evidence shows arose from a dispute between those two parties. Well, the I.J. seemed to be more persuaded by that, and I think that you could make the argument with somewhat dismissive of his claims that the uncle sought to kill him for political reasons. So we have to look at whether he got a full and fair hearing as opposed to, did the I.J. develop the record on that. It seemed the I.J. kind of kept steering it back to the property dispute and, you know, all of that. So I think that there's one specific instance of testimony in which that's true, Your Honor, and I think the reason for that is because Petitioner, when he first described his claim to the Customs and Border Patrol, made no mention of his uncle harming him on account of his political opinion. He mentioned only the land dispute. From that point forward, I think if you look at the testimony as a whole, Petitioner had more than enough opportunity to set forth every motivation that he wanted to talk about. He was repeatedly asked if he needed to add additional information, if he had anything else that he wanted to say. Furthermore, in the instance of testimony that I think may have caught your attention, it's worth noting that when the immigration judge said, so your uncle wants to harm you because of the land dispute, Petitioner was not required to agree with him. He could have said no. He could have then developed his testimony. Well, he did. That's the problem. This is somebody who was appearing in pro se, right, and at multiple points in his testimony, he tried to explain that he inherited land and his uncle wanted the land, but his uncle's very powerful in the party and wants to kill him. So you've got a pro se Petitioner who is essentially saying there's these two reasons and he wasn't able to articulate perfectly how the two reasons intersect. The IJ, who has a duty to develop the record, keeps steering it back to the economic motive and brushes aside his mention of a political basis for the attacks. How does that comport with due process and the IJ's duty to develop the record? I think you're right that the Petitioner has a pretty tough record in terms of nexus, but how do we know that he's able to develop that nexus better had the IJ fulfilled his obligation of developing the record for this Petitioner? Your Honor, I think it's important to keep in mind that from the due process standpoint, there has to be a showing of prejudice to warn remand here. Petitioner has never ---- That's what's tricky about it because there's some, you know, bits and pieces that I think Petitioner can basically utilize to argue nexus and let's say that it's insufficient at this stage, but if we conclude that there was a due process violation, shouldn't we send it back to give the Petitioner an opportunity to shore up the nexus? Your Honor, the government's argument is that there was no due process violation here. If the court were to conclude otherwise, yes, it might need to send it back on nexus, although actually, no, Your Honor, I'd like to retract that. If the court believes that there's a due process violation with respect to nexus, I think the government would pivot to the question of government unwilling, unable, or unwilling to protect, which is an independent grounds for the rejection of the assignment. Same issue, though. Same issue, though, right? They've got a little bit of a tough record right now on nexus, but they've got a tough record on unwillingness to protect as well. Couldn't that be cured with the remand to address the due process issue? Your Honor, I think there could always be additional evidence that could be submitted on remand. The question is whether the Petitioner was denied the opportunity to submit that evidence or to make those statements during the initial hearing. The government's position is that he was not. Has there been any offer of proof of what would have been presented? Are there any ñ has there been any offer that he would have presented other instances? Not strictly speaking, Your Honor, and that's where prejudice becomes an issue for the Petitioner as well. He's raised a number of, I suppose, hypothetical questions as to what he might have said had he been given the chance, but he's never explained what evidence would have arisen from those questions being asked. And the opportunity to do so is there. He has always had the opportunity to file a motion to reopen or, while the appeal was pending, a motion for remand with the Board. To that filing, he could have attached an affidavit setting forth the evidence or the testimony he would have provided had he been given the chance, but he's not done so. So what evidence was Islam required to provide to show that members of the ruling Awami League political party acted at the government behest? What case best supports your position? Your Honor, I think the ñ in order to show that the government was unwilling or unable to protect it, he would have had to show that the government was disregarding his complaints or was active in the persecution itself. Unless the persecution was by government actors or quasi-government actors. Yes, and was active in the persecution itself. I don't think we have evidence that attaches the Awami League members here to the government. We know that they're political, but we don't know that they are actual members or even quasi-members of the government. So a high-ranking member of a political party that's in charge of the government and directing his underlings to persecute a petitioner is not enough in the government's view? That's correct, Your Honor. The government's view is that there would have to be some more formal attachment to the government apparatus. And what's your best case for that? I apologize, Your Honor, I don't have a case offhand for that. I can follow up with the court. That's all right. I think one of the things, maybe you both argue this differently, but he did get to come back into the country in, I think, 2012. He left and then he did get to come back in. But he also had to pay a bribe, didn't he, to get back in? I'm not familiar. I don't believe that that's in the record, Your Honor. Okay, I thought I saw it somewhere in the record. But maybe I'm wrong. Okay. Did he say that? I don't know. Maybe someone can, maybe the other side can cite me to the record on that. I was just going to say, well, can't that go both ways? Can't that undercut the argument if that, in fact, is in the record? But now the fact that ---- Well, I think if we assume for the purpose of your question that it's in the record, Your Honor, I think my response ---- It's in the record. It is in the record. During his testimony, he explained that he had to bribe Bangladeshi immigration officials after he was deported there from Brazil, and the IJ made use of that fact to suggest that that means he didn't have trouble with the government. I think my response in that case, thank you, Your Honor, for that clarification, would be that having to pay a bribe to re-enter the country does not necessarily mean that the government would be unwilling or unable to protect someone from persecution. I think there's a distinction between those two things. Well, it can cut both ways. You could say, well, yeah, if you're going to really help me out, why are you making me pay money to get back in? I agree, Your Honor. And the fact that it cuts both ways I don't ---- I think hurts the petitioner's case here because, again, the court's aware of the standard of review. The evidence must compel the conclusion that the government is unwilling or unable to protect. And where it could cut both ways, the evidence does not compel one conclusion or the other. I can see I'm running low on time. If there's nothing further, I'm prepared to conclude. I don't think we have any additional questions. Thank you. Thank you. Your Honor, with respect to the government unable and unwilling, the standard is whether, in fact, the government, you know, even where a petitioner has filed a police report, what does that police agency do with that report is powerful evidence under this court's decision to determine how, in fact, willing and capable is the government to protect the applicant. And here we have two instances where the applicant went to the police. In fact, when he went to his own local police, he was denied. They said that they weren't going to take a complaint because it was against the AWAMI League. Well, but just, I mean, just because someone can't solve a crime doesn't mean the government's not, you know, because we have a lot of, you know, just watch forensic files, all the cold cases. I mean, there's a lot of, you know, it doesn't mean the government's not trying to. They just might not be very good at it. Except that in this case, Your Honor, there's two instances of where he went to the police. There's no evidence that the police ever went and followed up, ever questioned or investigated his complaint, and that is sufficient to establish unable and unwilling. And the fact that the... Well, it could be substantial evidence if you'd won, but the question does, the argument that they're making is the police did at least take a report. So you have to overcome, compel the other result. So that's what we have to decide. If it cuts two ways, the compel standard becomes difficult for you. And if you were on the other side, you know, whether it's supported by substantial evidence, then that's, it can go, you know, that's what I'm saying. You know, you have to consider our standard of review too. Sure, but in this case, Your Honor, to uphold the IJ's decision, we would need, the decision needs to be substantiated with reasonable and probative evidence. In this case, the immigration judge completely disregarded the February 2012 report when he goes to the police and tells them that his life is under threat. The immigration judge never questioned him about that. There's, and only relied on the fact that he had gone to the police in May 2012 and they accepted a report from him. And in addition, the government's position and the board's position is the fact that he went through the airport and the fact that the airport officials allowed him to travel through shows that the government is, in fact, has no interest in him. But that's not the standard. If that was the standard, no asylum applicant would be able to see their country. But that doesn't prove that there's something else out there that was left out. Your Honor, I think that's where the issue of the due process violation here goes to. Well, I know, but you could, but parties always can say, you know, he could have said this if, or there was this, and, you know, he's got a lawyer now. And I haven't heard anything along those lines. Well, Your Honor, and this court has held the president. Let's do better on a redo. When you lose, let's hope we don't do it the same way. No one does it the same way. But a redo isn't the same as that they're, you know, telling us that there was something that was really left out that would. And I don't see any of that proffered here. Your Honor, well, with respect to the first point, that it hasn't been proffered here, in Prez Lastor, this court held, you know, where a petition is not expected to create a record that does not exist. And that's in order to find prejudice, we can rely on the circumstantial evidence. And here there's an abundance of circumstantial evidence in the record. Instances where, multiple instances, where Mr. Islam was trying to explain that his political problems are far more egregious. And that is the main reason for why he's fled Bangladesh. And the immigration judge never conducted the follow-up with respect to that. And I think that this is. Okay. You're two minutes over. So unless my colleagues have any questions, we've given you additional time. Thank you, Your Honor. We request a remand for it. Okay. Thank you. Thank you. Thank you, Ms. Sonia, for doing this work. Thank you, Your Honor. Yes, we always appreciate and we like to compliment. We appreciate everyone that comes to court, of course. But the court always likes to state that when people do pro bono work, it's when we have important issues before the court and someone is not entitled to free of charge counsel, we appreciate that there are lawyers that are willing to develop the issues so that the court has a full record to decide the cases. Thank you. Thank you.
judges: Callahan, Nguyen, Bataillon